CASE 85.—MANDAMUS BY EDWARD BARRY AGAINST F. P.
JAMES AUDITOR OF STATE.—June 8, 1910.

## James, State Auditor v. Barry.

Appeal from Franklin Circuit Court.

R. L. Stout, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1   Statutes—Local or Special Laws—Valid Classification.—
    Where a subject of legislation is one reasonably depending
    upon or affecting the number and density of population as a
    correlative fact in the scheme of the particular legislation,
    classification according to population is allowable, but where
    the subject is one of general application throughout the state
    and has been so treated in a general scheme of legislation,
    distinctions favorable or unfavorable to particular localities
    rested alone upon numbers and density of population would
    be violative of Const. article 59, subds. 18, 29, prohibiting the
    passing of local or special acts concerning fees of officers,
    etc., or where a general law can be made applicable, and of
    article 60, providing that the General Assembly shall not in-
    directly enact any special or local act by the repeal in part
    of a general act, or by exempting from the operation of a
    general act any city, etc., and hence while it may be allow-
    able to require assessors in counties containing cities of
    the first class to have assistants or deputies, owing to the
    extraordinary labor imposed upon them by the greater num-
    ber to be assessed, while others have not such help, an act
    relating to salaries of public officers of a general class and
    providing that some of them should be paid regardless of
    whether they performed services, and others should be paid
    only in the event they rendered such services, would be vio-
    lative of such provisions, and they are violated by Act March
    15, 1906, c. 22, section 32, as amended by Act March 7,
    1910, providing that in counties containing cities of the first
    class on the first day of each month the Auditor of Public
    Accounts shall draw his warrant for $1,500, to be paid to

James, State Auditor, v. Barry.

the county assessor as an advancement to defray necessary office expenses and partial payment on the salaries of himself and deputies, to be deducted when his yearly settlement is made.

2. Officers—Compensation—Change After Election—Validity of Statute—Constitutional Provisions.—A county assessor, having been elected in November, 1909, and having assumed office in January, 1910, the compensation for his office when he was elected being fixed by statute at a percentage of the value of the assessment made by him to. be paid after the assessment was made, the act is also as to him violative of Const. section 161, providing that the compensation of any city, county, etc., officer shall not be changed after his election or during his term of office, and section 235, providing that the salaries of public officers shall not be changed during the the terms for which they are elected, there being a material change in permitting payment in advance.

3. Property—Present Use of Money.—The present use of money as against a future right of use is a valuable thing.

JAS. BREATHITT attorney general, JOHN.F. LOCKETT assistant attorney general for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellee was elected assessor of Jefferson county at the November election of 1909, and was inducted into office the first Monday in January, 1910. At the time of his election the law fixed his compensation as follows: "The assessor shall, after he has returned his tax book and the same has been corrected by the board of supervisors, present to the county court his account, verified by affidavit, stating the total assessed value of the property listed by him as shown by his tax book thus corrected; and if said court, upon investigation, finds said account to be correct, it shall certify to the Auditor the amount due to the assessor

for the services required of him by law which shall be based on the total value of the assessment made by him as above required, as follows: Four cents on the one hundred dollars of the first million, and one and one-quarter cents on each one hundred dollars of the excess over one million, but no assessor shall be entitled to receive more than four thousand dollars for his services during any year. In counties where the assessed value of property exceeds thirty-eight millions of dollars, the assessor shall be allowed, as compensation to deputies appointed and qualified, the sum of one thousand five hundred dollars for each seven and one-half million of dollars of property which may be assessed in excess of the thirty-eight million dollars. In counties where the assessment does not exceed one million dollars, the assessor shall be paid four and one-half cents on the one hundred dollars of the entire property listed." He was then, and is yet, required to "begin the duties of his office on the first Monday in September in each year" (section 4046, Ky. St. [Russell's St. sec. 5937]), as of which date all property which he is required to assess is listed with him. Section 1777, Ky. St. (Russell's St. sec. 2748), provides that, in counties having a population more than 75,000, the assessor may have certain deputies or assistants, whose compensation is to be fixed by an order of the county court, but providing that the total amount allowed for salaries of the assessor and his deputies shall not exceed the sums stated in the statute, nor in the aggregate the compensation allowed by law. By section 4072, Ky. St. (Russell's St. sec. 5964), which was section 32, art. 2, c. 22, of an act entitled "an act relating to revenue and taxation" which became a law March 15, 1906, it was provided that certain deductions were to be made

from the assessor's compensation for failure to prop-
erly return the lists, and then required the Auditor
of Public Accounts to draw his warrant on the State'
Treasurer for 80 per cent. of the allowance made to
the assessor for his compensation, and, after the Oc-
tober term of the fiscal court and after corrections
and deductions were provided against, for the re-
mainder. By an act of the Legislature approved
March 7, 1910, section 32, art. 2, c. 22, Act March 15,
1906 (now section 4072, Ky. St. Carroll's), was
amended so as to add the following: "In counties
containing a city of the first class, on the first of
March, 1910, and the first of each calendar month
thereafter, the Auditor of Public Accounts shall draw
his warrant on the Treasurer for fifteen hundred dol-
lars, which shall be paid to the county assessor, said
fifteen hundred dollars being an advancement by the
Commonwealth of Kentucky to the assessor to de-
fray necessary office expenses and partial payment
upon the salaries of himself and deputies. Said sums
shall be deducted from the total paid the assessor by
law when the yearly settlements are made. Should
the assessor die, resign, or be removed from office,
or should the office of assessor in counties containing
a city of the first class for any cause become vacant,
the sums deducted hereunder shall be deducted from
the yearly settlement when said settlement is made."

Appellant having refused to issue the warrant for
the $1,500 provided for in this act for the month of
April, 1910, appellee brought this suit for the issual
of the writ of mandamus against the Auditor, requir-
ing him to issue the warrant and like warrants for
the subsequent months. The Auditor contends that
the act is unconstitutional for various reasons, and
particularly because it violates section 59 and 60 of

that instrument inhibiting special or local legislation, as well as sections 161 and 235 forbidding the change of the salaries of public officers after they shall have been elected. The decision of both the points raised seem to us to be proper. Both are directly presented. The second point advanced, though it may be sufficient for the decision of appellant's case, would leave the statute unimpeached as to his successor in office. The Constitution itself expressly and in a number of instances recognizes the practical differentiation resting upon number and density of population. For example, provisions are made for cities and towns where they are not applied to rural communities; again, different provisions are made for different sized cities and towns, as well as for counties having different aggregates of population and wealth. Indeed, the Constitution itself provides for the classification of cities and towns in six different classes, and so required as to number of population that it was impossible when the Constitution was adopted, as well as unlikely for quite a while thereafter, that there would be but one city of the first class, and but one county having a population of 75,000 or more. From these facts it is argued in this case, an argument repeated whenever local or special legislation of the inhibited class is attempted in behalf of certain localities, that inasmuch as the constitutional convention recognized the various classifications of cities as a proper basis for governmental purposes, whenever the Legislature follows the same classification it is for that reason alone legitimate.

For certain purposes classification by population and its density are not only natural and logical, but any other basis would be unscientific and unsatisfactory. It has therefore been held frequently that gen-

eral laws which are by their terms restricted in their operation to cities of the first class in this state, when it was then a notorious fact that there was but one such city, were not in violation of the provisions against local legislation. But it was always pointed out, or plainly to be seen, that the legislation was also of a class which it was legitimate to classify upon the basis of population. On the other hand, instances have occurred where it was attempted to classify subjects by the sizes of cities where the question of the density of population had no appreciable relevancy to the subject. Such, for example, making a statute of six-month limitations to actions of tort or for salaries against a city of the first class, whereas the general law was one year, or five years. City v. Kuntz, 104 Ky. 584, 47 S. W. 592, 20 Ky. Law Rep. 805; City v. Seibert, 51 S. W. 310, 21 Ky. Law Rep. 328; Gorley v. City, 104 Ky. 372, 47 S. W. 263, 20 Ky. Law Rep. 602.

So the attempted gradation of a state license tax for doing business as a real estate agent based upon population. Hager, Auditor v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195.

When the subject-matter is purely one of municipal government, it is clearly competent for the Legislature to classify it alone upon number and density of population, as the Constitution implies if it does not expressly allow. When the subject is one that reasonably depends upon or affects the number and density of population as a correlative fact in the scheme of the particular legislation, then such classification is allowable. There are even perhaps other instances justifying such classification. But where the subject is one of general application throughout the

state, and has been so treated in a general scheme of legislation, distinctions favorable or unfavorable to particular localities, and rested alone upon numbers and density of population, are invidious, and therefore offensive to the letter and spirit of the Constitution, the latter reading (section 59, Const.) : ''The Legislature shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: (18) Fees of Officers.—To create, increase, or decrease fees, percentages or allowances to public officers, or to extend the time for the collection thereof, or to authorize officers to appoint deputies.  * * *   (29) In all other cases where a general law can be made applicable, no special law shall be enacted.''   By section 60, Id., it is provided (in part) : ''The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district, or county; but laws repealing local or special acts may be enacted.''

It has been held that it was not repugnant to these sections to enact that in counties containing cities of the first class for example certain officers should make reports not required of officers of the same kind in other counties, or that such first-named officers might have deputies or clerks not provided for all others not in that class.   Stone, Auditor, v. Wilson, Clerk, 39 S. W. 49, 19 Ky. Law Rep. 126; Winston v. Stone, Auditor,  102 Ky. 423, 43 S. W. 397, 19 Ky. Law Rep. 1483.   But, as was said in Safety B. & L. Co. v. Ecklar, 106 Ky. 115, 50 S. W. 50, 20 Ky. Law Rep. 1770: ''The true test whether a law is a general one in the constitutional sense is not alone that it applies equally to all in a class, though that is also necessary,

but, in addition, there must be distinctive and natural reasons inducing and supporting the classification." So, while it may be allowable to require assessors in counties containing cities of the first class to have assistants or deputies, owing to the extraordinary labor imposed upon them by the greater number to be assessed, while others had not such help, or, perhaps, that assessors in the first-named counties should assess a class of property not required of others (Murphy v. Louisville, 114 Ky. 762, 71 S. W. 934, 24 Ky. Law Rep. 1574), yet in the matter of fixing the time of paying the salaries of public officials of a general class, or whether some of them should be paid whether or not they performed the services, and the others should be paid only in event they rendered the services.

We think the act in question also violates both section 161 and section 235 of the Constitution. Section 161 reads as follows: "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment or during his term of office." Section 235 provides: "The salaries of public officers shall not be changed during the terms for which they are elected, but it shall be the duty of the General Assembly to regulate, by a general law, in which cases and what deductions shall be made for neglect of official duties. This section shall apply to the members of the General Assembly also." It was held by the circuit court that the act did not violate the Constitution, and it is argued for appellee here that it does not, in that it does not increase the cost to the state in any event for the work done, nor is it diminished. But it is to be noticed that the provisions of the Constitution go farther than that. They provide that the salaries or compensation of public

officials shall not be changed after their election. It was intended not only to protect the public against the evil of letting a public official use his official power and influence to augment his own salary, or the equally unjust action of an unfriendly power to cut down an official's salary because he was unpopular with the body whose duty it was to fix the salary, but to prevent also what would seem to have been implied in the spirit of the idea, that his salary should not be changed—that the matter of compensation was to remain substantially if not precisely as it was when the official was elected to the office. In this way only it was evidently thought could logrolling among officials and unjust intermeddling by unfriendly public bodies toward officials whose selection they did not approve, be prevented. In the act in question there is a material change in appellee's compensation. Under the law as it was when he was elected he could not receive any compensation during the year until after he had done the work. Now, under the new act, he would be paid not only in advance of his doing the work, but perhaps when he might never do it. If, for example, he should die, or resign, or be removed from office in August of any year, he would have been paid several thousand dollars which he would not have been entitled to nor have received at all under the old law. Although the statute provides in that event or seems to intend that the sum so paid him would be taken from the compensation that would be earned by his successor—a provision, the legality of which is not now passed upon, but for the purpose of this case only is assumed and in that event would entail no loss upon the state, yet it would very materially change the compensation of appellee. Furthermore, we are of opinion that, if there were nothing else but

the mere time of payment involved, it is so material in this instance as to constitute a substantial change. The present use of money as against a future right of use is a valuable thing. It is so regarded universally in commercial circles, and none the less so in law. If the Legislature had postponed the payment of all compensation to assessors until the expiration of their four-year terms, it would scarcely be contended by anybody that there had not been a substantial change in the matter of compensating those officials for their services. The Constitution forbids a change either favorable to or unfavorable to the public official. It is as much a change to anticipate by nine months, or any considerable time, the payment of such large sums as are here involved as it would be to postpone them for the same length of time beyond the period originally provided.

Argument is advanced to show that it is unjust to appellee to require him to maintain his office force for nine months of the year as he must do out of his own means, while the public receives the benefit of it. The argument is more properly one in advocacy of the adoption of the measure, rather than its validity when measured against the Constitution. Yet it shows that the change is one of material value and substance. There is not a reasonable or natural classification based alone upon the matter of population to be served. The subject of the act under investigation is independent of the matter of population, is one, in short, that is equally pertinent to all assessors' compensation. McHenry v. Winston, 105 Ky. 307, 49 S. W. 971. Schroer v. Central Asylum, 113, Ky. 288, 68 S. W. 150, 24 Ky. Law Rep. 150, holding that a provision exacting $50 more as board from patients committed to an insane asylum by public au-

thority than was required of patients not so committed, and Droege, Clerk, v. McInerney; Sheriff, 120 Ky. 796, 87 S. W. 1085, 27 Ky. Law Rep. 1137, holding that a statute providing that in counties containing second-class cities the circuit clerk should be the umpire on county election boards, whereas in all other counties the sheriff was umpire, were unnatural and unreasonable classifications. We conclude that the act here involved violates both section 59 (subsections 18 and 29) and section 61 of the Constitution.

The judgment is reversed, and the cause is remanded, with directions to the circuit court to sustain appellant's demurrer to the petition.