**UNITED DRY FORCES, et al., Appellants,**

v.

**Richard LEWIS, Commissioner, et al. and Jack T. Thompson, Mayor, et al., Appellees.**

Supreme Court of Kentucky.

June 16, 1981.

As Modified July 6, 1981.

H. G. Baldridge, Ashland, William D. Kirkland, Zaluski, Seay & Kirkland, Edward F. Prichard, Jr., W. Patrick Stallard, Prichard & Stallard, Frankfort, for United Dry Forces, et al.

Robert F. Matthews, John S. Reed, Richard A. Getty, Lisabeth Hughes, Greenebaum, Doll & McDonald, Louisville, Robert L. Woolery, II, William P. Emrick, McKenzie, Woolery & Emrick, P. S. C., Ashland, for Citizens For a Progressive Community and Ray McClure.

Dandridge F. Walton, Frankfort, for Richard Lewis, Commissioner, Edward A. Farris, Member, and John Crimmins, Member, Kentucky Alcoholic Beverage Control Board.

Richard W. Martin, Corp. Counsel, City of Ashland, Johnson, Dunnigan & Martin, Ashland, for Jack T. Thompson, Mayor, William A. Mordica, Commissioner, Norman "Dutch" Berry, Commissioner, Winston C. Morris, Commissioner, John C. King, Commissioner, City of Ashland, Ky.

STEPHENS, Justice.

The issue we decide on this appeal is the constitutionality of KRS 242.1292 (1980), which provides for special elections by precinct on the question of prohibition, solely in cities of the second class.

Appellants, plaintiffs below, are a group of citizens of Boyd County who are opposed to the sale of alcohol in the county. This action was commenced in the Franklin Circuit Court on July 14, 1980. The petition named the Kentucky Alcoholic Beverage Control Board and the City of Ashland as defendants. Citizens for Progressive Community, a local political issue group, and Ray McClure, an Ashland businessman, subsequently intervened as parties defendant. On August 28, 1980, appellants moved for a summary judgment claiming the statute was unconstitutional. On October 22, 1980, appellees also moved for summary judgment. On November 10, 1980, ruling that the statute was constitutional, the trial court granted summary judgment to appellees.

Kentucky Revised Statute 242.1292 provides a unique and innovative method by which one or more precincts, solely in a city of the second class where total or partial prohibition is in effect, may become "wet." The stated purpose of the statute is to alleviate economic distress in those areas. KRS 242.1292(10)(a). The statute provides a means whereby the voters in the affected precincts may determine in a type of mini-local option election whether they desire to abolish prohibition in their precinct. No vote may be taken, however, unless the governing body of the city designates a so-called "limited sale precinct." This shall be done by one of two methods: (1) a determination by the governing body on its own that one or more "dry" precincts within the city are substantially (economically) adversely affected by reason of the legal sale of alcoholic beverages in neighboring areas, or, (2) receipt by the governing body of a written petition requesting an election signed by a number of voters within the dry precinct equal to at least 33% of the persons

who voted in the last general election KRS 242.1292(10)(a), (b).[1]

When either event occurs, the city must order an election which is to be held pursuant to KRS Chapter 242. KRS 242.1292(2), (3), (4). In the event that any precinct shall vote "wet," the statute provides a mechanism for issuance of licenses and regulation of sale. KRS 242.1292(5), (6), (7).

The precise question we determine is whether the statute is special or local legislation which is violative of the provisions of sections 59 and 60 of the Kentucky Constitution. The relevant parts of those sections are as follows:

Section 59: "The general assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

. . . .

27. To provide a means of taking the sense of the people of any city, town, district, precinct or county, whether they wish to authorize, regulate or prohibit therein the sale of vinous, spirituous or malt liquors, or alter the liquor laws.

Section 60: The general assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county; but laws repealing local or special acts may be enacted.

No law shall be enacted granting powers or privileges in any case where the granting of such powers or privileges shall have been provided for by a general law, nor where the courts have jurisdiction to grant the same or to give the relief asked for . . . ."

When the constitution prohibits the legislature from passing special laws upon any given subject, it means that all laws upon a subject shall operate alike, upon all, whether an individual, a corporation, public or private. Section 59 is a safeguard for the protection of the weak as well as the strong. The legislature is prohibited from discriminating in favor of, or against, individuals or classes. *City of Louisville v. Kuntz*, 104 Ky. 584, 47 S.W. 592 (1898).[2]

Even though classification, based on numbers and density of population when the subject matter is municipal government, is generally proper, the right of the legislature is not absolute. Where the subject is one of general application throughout the state, and has been so treated by the general assembly, distinctions "favorable or unfavorable to particular localities, and rested alone upon numbers and populations, are invidious, and therefore offensive to the letter and spirit of the Constitution. . . ." *James v. Barry*, 138 Ky. 656, 128 S.W. 1070, 1072 (1910).

---

1. The exact wording of the statute is as follows:

"(10) Any precinct located entirely within any city of the second class in which prohibition is in effect in all or part of the city shall be designated as a limited sale precinct by the governing body of the city; provided that:

(a) The governing body determines to its satisfaction that the general trade, business and economy of one (1) or more of the precincts within the city is substantially adversely affected by reason of the legal sale of alcoholic beverages in any neighboring or adjoining state, county, city, town, district or precinct. For the purpose of making such determination, the governing body may hold such hearings, examine such witnesses or receive such evidence as it believes necessary or desirable for such purpose; or

(b) The governing body receives a petition signed by a number of constitutionally qualified voters of a precinct equal to thirty-three percent (33%) of the votes cast in the precinct at the last preceding general election requesting the governing body of the city to designate such precinct as a limited sale precinct. The petition may consist of one (1) or more separate units and shall be filed with the mayor of the city. In addition to the name of the voter, the petition shall also state his post office address and the correct date upon which his name is signed. Upon receipt of the petition, the mayor shall cause the same to be presented to the governing body of the city at its next regularly scheduled meeting and, after verifying that such petition is in compliance with the requirements of this section, the governing body shall forthwith by ordinance designate the precinct to be a limited sale precinct."

2. This was the first case interpreting section 59 following its adoption.

The linchpin case in regards to special legislation, and sections 59 and 60 of our Constitution, is *Mannini v. McFarland*, 294 Ky. 837, 172 S.W.2d 631 (1943). A Kentucky statute, applicable solely to fourth class cities, provided that neither a poolroom nor a bowling alley should be operated in a room where alcoholic liquors were sold. The statute was held to be special or local legislation in violation of section 59 of the Kentucky Constitution. The court enunciated a two-prong test in determining the constitutionality of legislation dealing with classification of cities based on population:

"Thus, a classification according to population and its density, and according to the division of cities into classes, is *not a natural and logical classification and cannot be sustained unless the act pertains to the organization or government of cities and towns* or is incident thereto, *or unless the classification has a reasonable relation to the purpose of the Act.*" (emphasis added) *Id.* at 632.

In other words, if legislation, dealing with a peculiar class of city (based on density of population) is to be constitutional within the framework of sections 59 and 60, it must (1) deal with the organization and structure of the government, or (2) it must bear a reasonable relation to the purpose of the Act.

We will examine the questioned statute and will apply both of the *Mannini* tests thereto.

Senate bill 187 of the 1980 Acts of the Kentucky General Assembly (now codified as KRS 242.1292) was entitled "AN ACT relating to alcoholic beverage control." It is conceded by the parties that the Act deals only with the City of Ashland, as all other second class cities are "wet." Moreover, it excludes all other classes of cities. The purpose of the Act is to relieve economic distress in those precincts in those cities to which it applies. The general assembly has concluded the sale of alcoholic beverages in those precincts will help facilitate the economic development and well-being of second class cities.

I

## DOES KRS 242.1292 DEAL WITH THE ORGANIZATION OR STRUCTURE OF GOVERNMENT?

Appellees argue, inductively, that (1) the statute involves the regulation of alcoholic beverage sale, (2) that such regulation is an exercise of the police power, (3) that the state may delegate part or all of such power to cities, (4) that municipal government has both governmental and proprietary functions, and (5) that the regulation of the sale of alcoholic beverages is governmental and that, ergo, (6) the statute complies with the first *Mannini* test. We do not agree. The court, in *Mannini*, enunciated the "government" test because of the existence of section 156 of our Constitution. Test number one, is, in effect, an exception to the prohibition (in sections 59 and 60) against local or special legislation, based on section 156, which authorizes classification of cities by size and density of population "for the purpose of organization and government." *Mannini*, supra, at 632. More significantly, however, the statute in *Mannini* dealt specifically (as in the present case) with regulation of the sale of alcoholic beverages. The court ruled that such does not pertain to governmental organization or structure. "*It* (the statute in question) *purports in no wise to be directed to the regulation of municipal powers or matters of local government. . . .*" (emphasis added) *Id.* at 634.

This ruling makes consistent and vital the joint existence and effectiveness of sections 59 and 60 and section 156 of our Constitution.

We therefore conclude that the statute does not deal with government organizations or structure as required by *Mannini*. It fails the first test.

II

## DOES THE ACT BEAR A REASONABLE RELATION TO ITS PURPOSE?

Since we have ruled that the statute did not comply with the first *Mannini* test, if it

does not comply with the second test, it is unconstitutional.

■ Prior to the decision of this case by the trial court, there was a special election held in several precincts in Ashland. The election was ordered by the governing body of the city pursuant to a petition signed and filed by the requisite number of voters. KRS 242.1292(10)(b). The "wet" vote prevailed over the "dry." We are well aware of the strong presumption of the constitutionality of enactments of the general assembly, especially when electoral choices are granted to the people. *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462, 487 (1974); *Sims v. Board of Education of Jefferson County*, Ky., 290 S.W.2d 491 (1956).

■ The sole purpose of the enactment of the statute, as evidenced by its terms and as agreed on by the parties, is to improve the economy of the affected areas. Under *Mannini*, therefore, the provisions of the Act must bear some reasonable relationship to the purpose of the act, viz., the alleviation of economic distress by the sale of alcoholic beverage. In so deciding, we do not agree or disagree with the general assembly's decision that the sale of alcoholic beverages will assist in economic development. We simply accept this legislative decision as a premise to our decision.

KRS 242.1292(10)(a), (b) are the sparks that ignite the statute into action. Section (10)(a) is clearly premised on a finding, by the governing body of the city, that the economy of the precinct(s) has been adversely affected because there is no sale of alcoholic beverages therein. This section of the statute is consistent with the overall purpose of the statute: to help a precinct's economy (and thereby help the city's economic woes). It bears a reasonable relationship to the purpose of the Act.

However, section (10)(b) is another matter. That section plainly and simply provides that the governing body of the city shall order a local option election in a dry precinct(s) if 33% of the voters at the last election request it. It is a separate and independent procedure from the procedure in (10)(a), which requires a determination of economic problems. Section (10)(b) makes no reference to economic problems. It simply allows—without any basis, without any reason—the voters in a precinct to request an election. Such a provision not only does not have a reasonable relationship to the purpose of the statute, it has *no* relationship thereto. We, therefore, conclude that section (10)(b) does not meet the second *Mannini* test.[3]

Because section (10)(a) complies with the second *Mannini* test, and because of the implied severability clause set out in KRS 446.090, we hold that, with the exception of section (10)(b), KRS 242.1292 is constitutional. However, since the elections in question were held based on the procedure set out in section (10)(b), and since that section is unconstitutional as being special or local legislation in violation of sections 59 and 60 of the Kentucky Constitution, it follows that said elections were invalid.

The judgment of the circuit court is reversed and the case is remanded to that court with directions to enter a judgment in conformity with this opinion.

All concur, except STEPHENSON, J., who dissents and files a separate opinion.

STEPHENSON, Justice, dissenting.

I have no argument with the reasoning of the majority opinion. It is a reasonable interpretation of *Mannini* in the context of the situation here. It is my opinion that an equally reasonable construction of the tests in *Mannini* would lead to the conclusion that the legislation pertained to or was incident to the government of cities. This interpretation would validate the legislation. In my view a reasonable argument

---

3. It is significant that in the petitions presented to the governing body of the City of Ashland, pursuant to section (10)(b), and in the actual question presented to the electorate, the question of alleged economic distress was absent. At this time, we do not need to express an opinion as to the effect of an amendment to section (10)(b) tying the vote procedure to the problem of economic distress.

can be made for either result, and in this circumstance I would not declare the legislation unconstitutional. I accordingly dissent.