TEMPERANCE LEAGUE OF KENTUCKY; Greg Earwood; and Dwight Donald Elam, Appellants,

v.

Donna B. PERRY, Scott County Clerk; Ben Chandler, Attorney General; George Lusby, Scott County Judge/Executive; Kentucky County Clerk's Association; John Cornett; Andrea Moss; and Citizens for a Better Georgetown, Appellees.

No. 2000–SC–1019–TG.

Supreme Court of Kentucky.

May 16, 2002.

---

**11.** Kentucky Evidence Rules Study Commission Commentary to KRE 501 (November, 1989).

**12.** KRE 501.

John Frith Stewart, Jeffrey C. Trapp, Segal, Stewart, Cutler, Lindsay, Janes & Berry, PLLC, Louisville, Counsel for Appellants.

J. Clay McKnight, Jr., Georgetown, Counsel for Appellees, Donna B. Perry, Scott County Clerk; and George Lusby, Scott County Judge/Executive.

Julius Rather, Lexington, Counsel for Appellee, Kentucky County Clerk's Association.

E. Douglas Richards, Lexington, John B. Baughman, Hazelrigg & Cox, Frankfort, Counsel for Appellees, John Cornett; Andrea Moss; and Citizens for a Better Georgetown.

A.B. Chandler III, Attorney General, Christina L. Bradford, Assistant Attorney General, Scott White, Assistant Deputy Attorney General, Frankfort, Counsel for Appellee, Ben Chandler, Attorney General.

## OPINION OF THE COURT

This case concerns a challenge to the constitutionality of KRS 242.185(6). We hold that the statute is constitutional and affirm the trial court's ruling.

### Facts and Procedural History

The Kentucky General Assembly passed Senate Bill 247 on March 29, 2000. The bill, which became effective on July 14, 2000, amends KRS 242.185 by allowing any "dry" city or county to hold a local option election to allow the sale of alcoholic beverages in certain restaurants and dining facilities.

Appellants, the Temperance League of Kentucky, Dwight Donald Elam, and Greg Earwood, brought a declaratory judgment action in Franklin Circuit Court to challenge the constitutionality of KRS 242.185(6). Appellants argued that the statute was special legislation that violated the Kentucky Constitution.

The trial court concluded that the statute was constitutional and entered an Opinion and Order denying declaratory relief. Appellants then appealed the trial court's Opinion and Order to the Court of Appeals. We granted Appellants' motion to transfer the case to this Court because

the issue presented is of statewide importance.

## Discussion

### I.  *Constitutionality of the Statute*

KRS 242.185(6) provides:

In order to promote economic development and tourism, other provisions of the Kentucky Revised Statutes notwithstanding, a city or county in which prohibition is in effect may, by petition in accordance with KRS 242.020, hold a local option election on the sale of alcoholic beverages by the drink at restaurants and dining facilities which seat a minimum of one hundred (100) persons and derive a minimum of seventy percent (70%) of their gross receipts from the sale of food.  The election shall be held in accordance with KRS 242.030(1), (2), and (5), 242.040, and 242.060 to 242.120, and the proposition on the ballot shall state "Are you in favor of the sale of alcoholic beverages by the drink in (name of city or county) at restaurants and dining facilities with a seating capacity of at least one hundred (100) persons and which derive at least seventy percent (70%) of their gross receipts from the sale of food?".  If the majority of the votes in an election held pursuant to this subsection are "Yes", licenses may be issued to qualified restaurants and dining facilities and the licensees may be regulated and taxed in accordance with subsections (4) and (5) of this section.

■ Appellants argue that this statute violates § 59 of the Kentucky Constitution, which provides that the "General Assembly shall not pass local or special acts . . . ." The test for determining whether legislation violates § 59 is set forth in *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954). This two-part test provides that (1) the legislation must apply equally to all in a class, and (2) there must be "distinctive and natural reasons inducing and supporting the classification." *Id.* at 941.

### A.  *Equal Application*

■ Appellants concede that KRS 242.185(6) applies equally to all dry cities and counties in Kentucky.  Appellants do not challenge the statute on this basis.  Rather, Appellants argue that the statute draws an unconstitutional distinction between restaurants that can sell alcohol by meeting the statute's minimum requirements and any other business that might want to serve liquor but cannot meet the statute's requirements.  The trial court rejected the classification urged by Appellants and instead concluded that the relevant classification was counties and cities.  We conclude that both classifications are constitutional under § 59.

*Mannini v. McFarland,* 294 Ky. 837, 172 S.W.2d 631 (1943), is factually and analytically similar to the case at bar.  In *Mannini,* the owner of a pool room challenged the constitutionality of a law that prohibited the sale of alcoholic beverages in bowling alleys and pool rooms in fourth class cities.  *Id.*  In holding that the statute violated § 59, the *Mannini* Court appears to have addressed both the classification in the statute as to fourth class cities and the classification as to pool rooms and bowling alleys:

[T]he classification of fourth class cities set up in the statute has no reasonable relation to the purpose of the statute. There appears to be no rational basis for assuming that the sale of beer in a poolroom in Danville is fraught with other or different consequences than a similar sale in the nearby fifth class city of Stanford or the somewhat more distant second class city of Lexington. *The General Assembly could by a general act legislate on this question or authorize*

*cities thus to legislate* but the subject of the Act is one of general application and the classification on which it rests is contrary to the constitutional provisions forbidding local or special legislation.

*Id.* at 634 (emphasis added).

In other words, *Mannini* holds that the classification in the statute limiting its application to fourth class cities violates § 59. But under *Mannini*, a general prohibition against selling alcohol in pool rooms and bowling alleys across the Commonwealth is not a classification that would violate the first part of the *Schoo* test. Nor would legislation violate the first part of the *Schoo* test that gave individual cities and counties the option to decide individually whether to prohibit the sale of alcohol in pool rooms and bowling alleys. Thus, under *Mannini*, prohibiting certain classes of businesses from selling alcohol under the statute is not special legislation in violation of § 59. For § 59 purposes, we discern no meaningful difference in a classification based on what types of businesses *cannot* serve alcohol and a classification based on what types of businesses *can* serve alcohol.

■ The "alcoholic beverage business is of such a special character that its treatment as a separate classification for purposes of regulation and license taxation is not subject to question." *George Wiedemann Brewing Co. v. City of Newport*, Ky., 321 S.W.2d 404, 408 (1959). Moreover, the sale of alcoholic beverages is the subject of extensive and detailed regulation within the Commonwealth. *See, e.g.,* KRS Chapters 241, 242, 243, and 244. Given the unique nature of the regulation and licensing of the sale of alcoholic beverages, almost any content-neutral, legislative classification based on the types of businesses or organizations eligible to sell alcoholic beverages would not constitute special legislation within the meaning of § 59. *Compare Commonwealth v. Seabolt,*

Ky.App., 668 S.W.2d 571 (1984) (which upholds the constitutionality of a statute that allows only restaurants, which seat a minimum of one hundred persons and derive a minimum of fifty percent of gross revenue from the sale of food, to apply for a Sunday liquor license) *with Commonwealth, Alcoholic Beverage Control Board v. Burke,* Ky., 481 S.W.2d 52 (1972) (which strikes down as unconstitutional a statute that prohibits women from being employed in a business that sells alcoholic beverages except to work as servers, cashiers or ushers). Certainly, the classification made in this case does not violate § 59. *See, e.g., Seabolt, supra.*

B. *Reasonably Related*

■ As found by the trial court, the "General Assembly's intent in amending KRS 242.185(6) was to promote economic development in all dry cities and counties." In so doing, the General Assembly has assumed that the sale of alcoholic beverages will further this purpose. We defer to the General Assembly's conclusions on this issue. *See United Dry Forces v. Lewis,* Ky., 619 S.W.2d 489, 493 (1981). We now turn to the question of whether the classification set forth in the statute is reasonably related to this purpose.

The trial court found that the classification made—*i.e.,* that only restaurants or dining facilities that seat a minimum of one hundred persons and derive seventy percent of their gross receipts from the sale of food may apply for licenses under the statute—was reasonably related to the statute's purpose:

> The Court finds that there are logical reasons to limit liquor sales to larger restaurants. The purpose of this act is to increase the amount of business income, potential tax revenue and other development benefits to a community. The limitation of this opportunity to

larger restaurants is rational, as the General Assembly could reasonably have assumed that selling alcohol in taverns and other small establishments, or establishments whose principal business is selling alcohol, would not promote the type of economic development described above.

*Opinion and Order*, Franklin Circuit Court, 00–Cl–00811, 6–7 (November 3, 2000).

We agree with the trial court's findings that the classification made in the statute is reasonably related to the statute's purpose. This conclusion is supported by this Court's decision in *United Dry Forces.*

Like the case at bar, *United Dry Forces* concerned a statute that provided for the holding of local option elections. 619 S.W.2d at 490. But the local option elections permitted in *United Dry Forces* were not county or city wide; rather, they were to be held in one or more individual precincts. *Id.* The stated purpose of the statute under consideration in *United Dry Forces*—which by its own terms applied only to second-class cities—was to alleviate economic distress. *Id.* The statute allowed two separate and distinct means by which voters in an affected precinct could determine in a "mini-local option election" whether they wanted to allow the sale of alcohol in their precinct. *Id.* But whether a vote could be taken was dependent on the precinct being designated as a "limited sale precinct" by the governing body of the city. *Id.* Under the statute, this only could be done by one of two methods:

(1) a determination by the governing body on its own that one or more "dry" precincts within the city are substantially (economically) adversely affected by reason of the legal sale of alcoholic beverages in neighboring areas, or, (2) receipt by the governing body of a written petition requesting an election signed by a number of voters within the dry precinct equal to at least 33% of the persons who voted in the last general election.

*Id.* at 490–91.

The *United Dry Forces* Court separately analyzed each of the above methods for designating a "limited sale precinct." It determined that the second method had no relationship to the purpose of the statute and, thus, violated § 59. *Id.* at 493. But it concluded that the first method was consistent with the overall purpose of the statute and therefore held that the first method satisfied the second part of the *Schoo* test. *Id.* The first, constitutionally permissible method bears great similarity to the scheme for permitting local option elections set forth in KRS 242.185(6).

The first method analyzed in *United Dry Forces* permitted holding an option election only upon a determination by the relevant governing body that a precinct or precincts had been negatively impacted because alcohol could not be sold in the precinct or precincts. Once this determination was made, a "mini-local option election" was permitted to be held in the affected precinct, or precincts, in order to alleviate the adverse impact. That is, the first method makes or assumes a connection between the sale of alcohol and increased economic activity. Under KRS 242.185(6), rather than leaving the determination to the local government, the General Assembly has predetermined that the sale of alcohol in restaurants of certain types and sizes in otherwise dry cities or counties will spur economic growth. Thus, KRS 242.185(6) makes the same or similar connection between the sale of alcohol and increased activity that is made in the first method for holding a "mini-local option" election considered in *United Dry Forces.*

II. *Constitutionality of the Election*

■ Appellants next argue that § 61 of the Kentucky Constitution prohibits the holding of local option elections on a general election day. Therefore, they argue the results of any and all elections held pursuant to KRS 242.185(6) on a general election day are void. We disagree.

Section 61 provides:

The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. *All elections on this question may be held on a day other than the regular election days.*

(Emphasis added).

This provision clearly allows local option elections to be held on days other than regular election days. Appellants argue that whether the provision allows elections to be held on a regular election day is ambiguous. We find no ambiguity.

As used in § 61, "election" is an "election" within the meaning of § 147 of the Kentucky Constitution. *Belknap v. City of Louisville, Ky.,* 99 Ky. 474, 36 S.W. 1118, 1119 (1896), *overruled on other grounds, Montgomery County Fiscal Court v. Trimble,* 104 Ky. 629, 47 S.W. 773, 776 (1898); *Board of Education v. City of Winchester,* 120 Ky. 591, 87 S.W. 768, 769 (1905). As such, the day and time for which elections under § 61 can be held is controlled by § 148, which provides in pertinent part: "Not more than one election each year shall be held in this State ..., *except as otherwise provided in this Constitution." Id.* (Emphasis added). Consequently, absent the permissive "may" in the last sentence in § 61, a local option

election must be held on the general election day set forth in § 148. *Cf. Patterson v. Lawson,* 255 Ky. 781, 75 S.W.2d 507 (1934) (A special election held to decide the composition of fiscal court was void because the day of the election was not in accordance with the regular election day established by § 148.). Thus, the last sentence in § 61 is constitutionally necessary to allow a local option election to be held on a day other than the regular election day mandated by § 148. The last sentence of § 61 serves to give permission to hold local elections on days other than the regular election day established in § 148. It does not preclude local option elections from being held in accordance with § 148. If that was the intent, then the word "shall" would have been used in the last sentence of § 61 rather than the word "may."

Having concluded that § 61 is not ambiguous, it normally would violate basic rules of statutory construction to turn to the constitutional debates in order to determine legislative intent. *City of Vanceburg v. Plummer,* 275 Ky. 713, 122 S.W.2d 772, 776 (1938) ("Where the language of a statute is doubtful or ambiguous, resort may be had to the journals or to the legislative records showing the legislative history of the act in question in order to ascertain the intention of the Legislature, but this rule does not apply where the language of the statute is plain and unambiguous.") We do so now only to show the fallacy in the dissent's reliance on the constitutional debates.

At page 5788 of the Debates (Vol.IV), Delegate C.J. Bronston of Lexington offered an amended version of section 112, which ultimately became § 61 of the Constitution. This amended version was identical to what is now § 61, except that it did not include the last sentence pertaining to the day on which the "sense of the people"

could be taken. Delegate C.T. Allen of Caldwell County offered a substitute to Bronston's amendment that read:

> The General Assembly shall, by general law, *provide for an election* whereby the sense of the people of any county, city, town, district or precinct may be taken as to whether or not spirituous, vinous or malt liquors shall be sold, bartered, loaned or given away therein, or the sale thereof regulated; *and such election shall be on a day separate and apart from other election days.* Nothing herein shall be construed to repeal or modify any law now in force in any county, city, town, district or precinct relating to the sale, barter, loan or gift of such liquors.

A debate over these two versions then ensued. Delegate Bronston argued that his version required all local option elections to be held "on the same day that other elections are held on," whereas Allen's substitute "authorizes their holding on a separate day." Debates, 5788. Bronston also objected to the "provide for an election" language because the intent of his (Bronston's) version was not to provide for an election but "to provide a means by which the sense of the people can be taken." Debates, 5789. Delegate Allen responded that he wanted to make sure that the "sense of the people" be taken by an election and not by some other means, and clearly indicated that the intent of his substitute was not merely to *authorize,* but to *require,* that the election occur on a day other than a regular election day. Following an adjournment, Allen withdrew his previous proposed substitute and offered a new amendment that merely added to Bronston's version what is now the last sentence in § 61: "All *elections* on this question *may* be held on a day other than the regular election day." (Emphasis added). The amendment was accepted and the section, as amended, was adopted 48—

26 with both Bronston and Allen voting with the majority. Debates, 5790.

Obviously, the last sentence in § 61 was a compromise between Bronston's desire that local option issues always be resolved by taking the "sense of the people" and that such "takings" always be held on a regular election day, and Allen's desire that local option issues always be resolved by elections and that such elections never be held on a regular election day. The substitution of "may" in Allen's final amendment for "shall" in his withdrawn substitute amendment shows that the legislative history of § 61 supports our holding today and not the contrary view taken by the dissent.

For the reasons set forth above, we hold that KRS 242.185(6) does not violate § 59 of the Kentucky Constitution. We further hold that the holding of a local option election on a regular election day is permissible under § 61 of the Kentucky Constitution.

Therefore, we affirm the Franklin Circuit Court's Opinion and Order.

LAMBERT, C.J.; COOPER, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion.

GRAVES, Justice, Dissenting.

Respectfully, I dissent. Nine Kentucky communities held an election under KRS 242.185(6) on November 7, 2000, a general election day, with Georgetown, Murray, Kuttawa, and Guthrie passing their ballot measures. Because all local option elections must be held on a day other than a general election day, all nine elections should be nullified in accordance with law.

In deciding this case, we are faced with construing an ambiguous section of the Kentucky Constitution. Section 61 reads:

The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spiritous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days.

The majority argues that, in the last sentence, the word "may" allows local option elections to be held either on general election days or on other days. It is elementary that the word "may," is permissive, and it is the election itself that is permitted and not the day on which the election is held. Since the statute is subject to both interpretations, this Court should follow established rules of statutory construction to decide between the competing interpretations.

According to conventional rules of statutory construction, as stated by this Court, "[w]here the language of the statute is doubtful or ambiguous, resort may be had to the journals or to the legislative records showing the legislative history of the act in question in order to ascertain the intention of the Legislature...." *City of Vanceburg v. Plummer,* 275 Ky. 713, 122 S.W.2d 772, 776 (1938). In this case, the legislative history gives an excellent indication of legislative intent. The sponsor of § 61 at the Constitutional Convention of 1890 was Delegate C.T. Allen, who said:

I am in favor of giving the temperance element a fair field and an open fight, and there is but one way to do it, and that is to make these temperance elections on a day separate and apart from all the others. Kentuckians particularly are given to politics, and they are not in favor of mixing moral or temperance questions with political questions. The holding of temperance questions on the day of political elections will tend to greatly disturb the political parties of this state. I am opposed to it for that reason.

Debates, Constitutional Convention of 1890, Vol. 4, P. 5789. Delegate Allen himself proposed the language causing this dispute, that "[a]ll elections on this question may be held on a day other than the regular election days." Clearly in his mind, the mixing of temperance questions and general political elections was inappropriate. The framers of our Constitution were well-educated and literate. They were trained in grammar and syntax. If they had desired the majority's result, they would have clearly written "elections on this question may be held on regular election days or some other day." However, they use the adjective "all" which means every local option election, and they chose the phrase "on a ... day other" to determine when the election may be held.

Appellee in this case is correct in that Kentucky courts have repeatedly affirmed that "may" is a permissive, rather than mandatory term. *See e.g., Alexander v. S & M Motors, Inc.,* Ky., 28 S.W.3d 303, 305 (2000). Here, the term is permissive in the respect that it allows local option elections to occur. But when they do occur, they must be held on days other than general election days. The passage of time and changes in society, economy, and government does not change the plain meaning of the words "may" and "day other." By giving these words their natural and popular meaning, it is not difficult to determine the plain meaning of Section 61.

The Kentucky Constitution is the voice of the people. It has withstood the test of time and experience, and it should not be evaded for the sake of situational expediency.