**LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, APPELLANT**

v.

**O'SHEA'S–BAXTER, LLC (D/B/A Flanagan's Ale House), et al., Appellees.**

**No. 2013–SC–000085–DG.**

Supreme Court of Kentucky.

Aug. 21, 2014.

---

**24.** *Bridger*, 355 F.2d at 387.

Michael J. O'Connell, David A. Sexton, for Appellant.

Kenneth Sidney Handmaker, Kevin Lee Chlarson, for Appellee, O'Shea's Baxter, LLC (d/b/a Flanagan's Ale House).

David A. Smith, Stephen Bryant Humphress, for Appellee, Commonwealth Of Kentucky, Alcoholic Beverage Control Board.

Opinion of the Court By Justice SCOTT.

This appeal arises from a challenge by O'Shea's–Baxter, LLC, d/b/a Flanagan's Ale House (Flanagan's) to an order of the Alcoholic Beverage Control Board (ABC Board) upholding the Louisville/Jefferson County Government's (Louisville Metro) denial of Flanagan's's application for a retail drink license. The issues involved in the present action concern KRS 241.075, which prohibits the issuance of a retail drink license to an applicant located in a "combination business and residential area" of a city of the first class or consolidated local government if another "similar establishment" is located within 700 feet of the applicant. Flanagan's challenges the constitutionality of KRS 241.075 on the grounds that it (1) constitutes local and special legislation in violation of Sections 59 and 60 of the Kentucky Constitution, (2) exercises arbitrary power and fails to provide for equal protection under the law in contravention of Section 2 of the Kentucky Constitution, and (3) unconstitutionally delegates zoning powers vested in local governments to the state. The Court of Appeals ruled that the statute was unconstitutional local and special legislation in violation of Sections 59 and 60 of the Ken-

tucky Constitution. We affirm the Court of Appeals' ruling.

## I. BACKGROUND

Flanagan's operates at 934 Baxter Avenue in Louisville, where it serves food and drink to the public. In April 2007, Flanagan's applied for a retail liquor drink license to replace its restaurant drink license. Louisville Metro's local ABC administrator denied the application, relying on the 700–feet restriction of KRS 241.075.

Thereafter, Flanagan's appealed the administrator's decision to the ABC Board. Citing KRS 241.075, the ABC Board entered a final order affirming Louisville Metro's denial of Flanagan's's application for a retail liquor drink license. Flanagan's appealed the ABC Board's decision to the Franklin Circuit Court, arguing that KRS 241.075 is unconstitutional because the statute's 700–feet requirement only applies to businesses in certain parts of first-class cities and consolidated local governments and, therefore, the statute is discriminatory and in violation of the proscription on special legislation found in Sections 59 and 60 of the Kentucky Constitution.

The circuit court declined to declare KRS 241.075 unconstitutional, holding that an important public purpose was served by limiting the density of establishments authorized to serve and sell liquor in the "combination business and residential areas" of Louisville Metro. Accordingly, the circuit court denied Flanagan's's motion for summary judgment and granted summary judgment in favor of Louisville Metro and the ABC Board.

Flanagan's again appealed, maintaining that KRS 241.075 is unconstitutional and that the circuit court erred by relying on the statute to rule in favor of Louisville Metro and the ABC Board. The Court of

Appeals noted that KRS 241.075(1) authorizes the state board to divide cities of the first class or consolidated local governments into "downtown business areas" and "combination business and residential areas" for the purpose of regulating the location of retail package liquor and retail drink licenses. Further, the Court of Appeals observed that KRS 241.075(2) applies the requirement of a distance of 700 feet between retail liquor licenses only to licenses in "combination business and residential areas" and not to licenses in "downtown business areas." The Court of Appeals also took notice that, as a practical matter, the classifications made by KRS 241.075 and the 700–feet rule could only apply to Louisville Metro since Louisville is the only city of the first class and the only consolidated local government in Kentucky.[1] *See* KRS 67C.101; KRS 81.010 (repealed).

Finding no reasonable basis to presume that the circumstances associated with the concentration of liquor licenses in the "combination business and residential area" in Louisville Metro are any different than they are in the "downtown business area" of Louisville or in other cities throughout the Commonwealth, the Court of Appeals concluded that KRS 241.075 was unconstitutional special and local legislation in violation of Sections 59 and 60 of the Kentucky Constitution. This Court subsequently granted Louisville Metro's motion for discretionary review.

## II. LOCAL AND SPECIAL LEGISLATION

 Flanagan's argues on appeal that KRS 241.075 constitutes local or special legislation in violation of Sections 59 and 60 of the Constitution of Kentucky and that Louisville Metro and the ABC Board cannot rely on the statute to deny Flanagan's's liquor license application. The application of constitutional standards is a question of law which we review de novo. *Jacobsen v. Commonwealth*, 376 S.W.3d 600, 606 (Ky.2012).

As mentioned above, KRS 241.075(1) provides that the ABC Board shall divide cities of the first class and consolidated local governments into separate "downtown business areas" and "combination business and residential areas."[2] The ABC Board made the division mandated by KRS 241.075(1) in 804 KAR 7:010(2), which designated a small portion of the City of Louisville as a "downtown business area."[3] Additionally, KRS 241.075(2) re-

---

1. House Bill 331, effective January 1, 2015, will change the way cities are classified, reducing the number of classifications from six to two. 2014 Ky. Acts, ch. 92 § 1(1). Louisville and Lexington, both of which have merged city/county governments, will be first-class cities. *Id.* All other cities will be second class under the law. *Id.*

2. KRS 241.075(1) states in full:
 The State Alcoholic Beverage Control Board shall, for the purpose of regulating the location of quota retail package licenses and quota retail drink licenses in cities of the first class or consolidated local governments, divide such cities or consolidated local governments into "downtown business areas" and "combination business and residential areas."

3. 804 KAR 7:010 provides, in pertinent part:
 (2) The City of Louisville shall be divided into two (2) sections.
 (a) "Downtown business area" shall consist of that portion of the city which is bounded as follows: Beginning at the north east corner of Eighth Street and the Ohio River; then southwardly along the east side of Eighth Street to the south west corner of Broadway; then eastwardly along the south side of Broadway to Preston Street and to include only those premises on the south side of Broadway having a Broadway Street address; then north on the west side of Preston Street to the Ohio River; then westwardly along the southern boundary of the Ohio River to the northeast corner of Eighth Street, the point of beginning.

quires a minimum distance of 700 feet between retail drink licensees in "combination business and residential areas" in cities of the first class or consolidated local governments.[4]

Section 59 of our Constitution provides that "where a general law can be made applicable, no special law shall be enacted." In like manner, Section 60 provides that "[t]he General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county...." The primary purpose of Section 59, and by extension Section 60, is to "prevent special privileges, favoritism, and discrimination, and to [e]nsure equality under the law." *Ky. Harlan Coal Co. v. Holmes*, 872 S.W.2d 446, 452 (Ky.1994). These two sections of our Constitution prevent the enactment of laws that do not "operate alike on all individuals and corporations." *Jefferson Cnty. Police Merit Bd. v. Bilyeu*, 634 S.W.2d 414, 416 (Ky.1982) (citing *City of Louisville v. Kuntz*, 104 Ky. 584, 47 S.W. 592, 592–93 (1898)).

The question of whether an act constitutes local or special legislation often arises when a statute, such as KRS 241.075, treats classes of cities differently. Generally, classifications that are "favorable or unfavorable to particular localities, and rested alone upon numbers and populations, are invidious, and therefore offensive to the letter and spirit of the Constitution...." *United Dry Forces v. Lewis*, 619 S.W.2d 489, 491 (Ky.1981) (quoting *James v. Barry*, 138 Ky. 656, 128 S.W. 1070, 1072 (1910)).

However, an act is not necessarily rendered unconstitutional by the fact that there is only one city of the class to which the legislation is applicable. *City of Louisville v. Klusmeyer*, 324 S.W.2d 831, 834 (Ky.1959); *Commonwealth v. Moyers*, 272 S.W.2d 670, 673 (Ky.1954). Indeed, in *Mannini v. McFarland*, our predecessor Court developed a test for determining whether legislation on the basis of population is constitutionally sustainable. *Mannini* held that a legislative classification according to population and its density, and according to the division of cities into classes, will be constitutional under the framework of Sections 59 and 60 only if (1) the act relates to the organization and structure of a city or county government or (2) the classification bears "a reasonable relation to the purpose of the Act." 294 Ky. 837, 172 S.W.2d 631, 632 (1943).

Louisville Metro does not assert that KRS 241.075 pertains to the organization and government of cities or counties. *Id.* In fact, it is well-settled that statutes governing the sale of alcoholic beverages have no relation to governmental organization or structure. *Lewis*, 619 S.W.2d at 492; *Mannini*, 172 S.W.2d at 634. Thus, in order for KRS 241.075 to be constitu-

(b) "Combination business and residential areas" shall consist of all the area of the City of Louisville not described above in the "downtown business area."

4. KRS 241.075(2) reads in full:
 No quota retail package or quota retail drink license shall be granted or issued to any licensee who proposes to sell distilled spirits and wine by the package or by the drink at a location within seven hundred (700) feet of the location of any similar

establishment in any combination business and residential area, nor shall such license be granted or issued to any licensee who proposes to operate at a location in a combination business and residential area within seven hundred (700) feet of a similar establishment located in a downtown business area. This section shall not affect location of such establishments in downtown business areas of such cities or consolidated local governments.

tional, the legislature's separate classification of Louisville on the basis of its population must bear "a reasonable relation to the purpose of the Act." *Mannini,* 172 S.W.2d at 632.

■ The apparent purpose of KRS 241.075 is to limit the concentration of establishments with retail package licenses and retail drink licenses. Therefore, we must ask whether KRS 241.075's separate classification of the consolidated local government of Louisville bears a reasonable relation to the act's purpose of limiting the concentration of retail drink licenses. *Mannini* is instructive on this question because it contains an example of an alcoholic beverage control statute that was ruled unconstitutional for treating classes of cities differently when the classification of cities failed to bear any reasonable relation to the purpose of the Act.

In *Mannini,* the owner of a poolroom challenged the constitutionality of a law, applicable solely to cities of the fourth class, which prohibited the sale of alcoholic beverages in bowling alleys and poolrooms. *Id.* at 631–32. Holding the statute to be special legislation in violation of Sections 59 and 60 of the Kentucky Constitution, our predecessor Court found no reasonable relationship between the size or class of the cities and the purpose of the Act. *Id.* at 634. The Court concluded:

> [T]he classification of fourth class cities set up in the statute has no reasonable relation to the purpose of the statute. There appears to be no rational basis for assuming that the sale of beer in a poolroom in Danville is fraught with other or different consequences than a similar sale in the nearby fifth class city of Stanford or the somewhat more distant second class city of Lexington. The General Assembly could by a general act legislate on this question or authorize cities thus to legislate but the subject of

the Act is one of general application and the classification on which it rests is contrary to constitutional provisions forbidding local or special legislation.

*Id.*

In our consideration of the present case, we remain mindful that legislative enactments regulating alcohol are entitled to a particularly strong presumption of constitutionality. *Temperance League of Kentucky v. Perry,* 74 S.W.3d 730, 733 (Ky. 2002). Nonetheless, *Mannini* persuades this Court that, in order for the legislature to regulate retail drink license concentration in Louisville Metro on the basis of population density, there must be a rational basis for assuming that a concentration of retail drink licenses in a consolidated local government (Louisville Metro) will present different consequences than a similar concentration of licenses in other classes of Kentucky cities and urban governments. *Mannini,* 172 S.W.2d at 634. Only then will the separate classification of Louisville Metro "bear a reasonable relation to the purpose of the Act." *Id.* Otherwise, if the potential concentration of liquor establishments presents the same consequences in a first-class city as it does in other cities, the General Assembly should legislate on the subject by a general act. *Id.*

Turning to Louisville Metro's argument, it asserts that KRS 241.075's 700–feet restriction is not local or special legislation because one of the most effective means of regulating alcohol is to limit the total number of licenses on the basis of factors such as density of population, amount of police protection, and the character of the territory where the licenses are sought, i.e., business or residential. These factors are recognizable as reasons that were identified by this Court in *Ky. Alcoholic Beverage Control Bd. v. Klein* that would justify placing a quota on the total number of

liquor licenses that could be issued in a community. 301 Ky. 757, 192 S.W.2d 735, 738 (1946). Louisville Metro offers no explanation as to how these same factors justify limiting the concentration of retail drink licenses.

As a second point in its argument, Louisville Metro contends that a rational basis exists for classifying the "downtown business area" differently from the "combination business and residential area" because downtown is an overwhelmingly commercial area with little residential development. Therefore, according to Louisville Metro, the evils endemic to the sale of alcoholic beverages, such as noise, traffic, public intoxication, violence, and crime, are not as likely to affect the quality of life of residents.

As noted above, in order for KRS 241.075 to be constitutional, there must be some distinctive and natural reason for the separate classification of a consolidated local government (Louisville) that relates to the purpose of the act—to limit the concentration of retail liquor drink licenses. However, instead of offering reasons why a first-class city deserves such a separate classification, Louisville Metro simply repeats, without any explanation or support, reasons that were identified by this Court in *Klein* for placing a quota on the total number of liquor licenses in a community.[5] But, neither the size of the population of Louisville, the greater amount of police protection, nor the character of Louisville are natural and distinctive reasons to limit the concentration of liquor licenses in Louisville Metro but not in any other city.

Certainly, population is an important factor that should be considered when setting a quota on the total number of retail drink licenses in an area. However, we do not see as clear a link between population and the issue of drink license concentration. Cities such as Lexington and Covington, although having a lesser population than Louisville, are still as likely to contain commercial and residential areas where drink license concentration may become an issue. Even less clear is Louisville Metro's alleged connection between greater police protection and a law limiting the concentration of retail drink licenses. Louisville Metro does not explain this connection, and we do not endeavor to do so on its behalf.

Furthermore, although Louisville Metro may have offered a compelling basis for separately classifying Louisville's "downtown business area,"—to insulate residential areas from the evils of alcohol—the separate classification of Louisville's downtown was necessary only because of the application of KRS 241.075's 700–feet rule to the rest of Louisville. In essence, 804 KAR 7:010(2)'s designation of Louisville's "downtown business area" does nothing more than put downtown Louisville's retail drink licensees back on par with the licensees in the other classes of Kentucky cities. In Louisville's "downtown business area," there is no 700–feet rule limiting the concentration of retail drink licenses, just as there is no such rule in Lexington or Bowling Green. Therefore, even if the separate classification of Louisville's "downtown business area" is constitutional, it does not support a finding that the 700–feet rule is constitutional.

Having considered Louisville Metro's arguments, we find that neither Louisville Metro nor the ABC Board have offered any compelling reason why the concentra-

---

5. Under KRS 241.065(1) and (2), retail package and retail drink licenses are each not to exceed one for every 1,500 residents in counties containing cities of the first class, such as Louisville Metro. Additionally, 804 KAR 9:010(1) and (2) provide that those numbers should not exceed 2,300 or 2,500 in smaller communities of the Commonwealth.

tion of liquor licenses should be legislated differently in the "combination business and residential area" of Louisville than in all the other cities of the Commonwealth.[6] Moreover, no rational basis is readily apparent to us by which we might presume that the circumstances associated with a concentration of liquor licenses in the "combination business and residential area" in Louisville are any different than they would be in other sizable cities not designated as first class or consolidated local governments, such as Lexington, Bowling Green, Owensboro, or Covington.[7] The business and residential areas of these other cities are not immune to whatever evils may flow from a concentration of retail drink licenses. Thus, there is no reason to assume that the concentration of retail drink licenses in Louisville is "fraught with other or different consequences" than the concentration of similar licenses in other Kentucky cities. *Mannini*, 172 S.W.2d at 634.

KRS 241.075 imposes a 700–feet restriction between liquor-only licensees on the consolidated local government of Louisville when it could have been made applicable throughout the state by a general act. The statute does not treat individuals and corporations across the state alike, *Bilyeu*, 634 S.W.2d at 416 (citing *Kuntz*, 47 S.W. at 592–93), and it unnecessarily discriminates against potential retail drink licensees in Louisville's consolidated local government, *Holmes*, 872 S.W.2d at 452. For these

reasons, KRS 241.075's separate classification of Louisville's consolidated local government for the purpose of limiting the concentration of retail drink licenses is a local and special act in violation of the letter and spirit of Sections 59 and 60 of our Constitution. Consequently, the judgment of the Court of Appeals is affirmed.

Because the judgment of the Court of Appeals is affirmed on the basis of an unconstitutional classification under Sections 59 and 60, we do not find it necessary to address Appellant's remaining arguments.

## III. CONCLUSION

KRS 241.075 violates Sections 59 and 60 of the Kentucky Constitution. Since the statute is void, we affirm the Court of Appeals' judgment in favor of Flanagan's. Accordingly, the judgment of the Franklin Circuit Court is reversed and we remand with instructions for the circuit court to enter summary judgment in favor of Flanagan's.

All sitting. All concur.

---

6. The ABC Board submitted a brief to this Court wherein it declines to take a position on the constitutionality of KRS 241.075(2).

7. Even more, we find no rational basis for treating the independently incorporated cities within Louisville Metro differently than the "combination business and residential areas" of the city. Under KRS 67C. 111(1), cities existing prior to the consolidation of local government remain incorporated and retain the powers and functions applicable to cities

of the class to which they were assigned prior to consolidation. Thus, incorporated cities within Jefferson County, e.g. Jeffersontown and St. Matthews, are not subject to the 700–feet rule and nothing other than those cities' own ordinances would abate the concentration of retail drink licenses within their borders. Louisville Metro makes no attempt to justify the separate treatment of independently incorporated cities within the city of Louisville.