RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0520-DG

LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT
WASTE MANAGEMENT DISTRICT;
GREG FISCHER, IN HIS OFFICIAL
CAPACITY AS MAYOR OF LOUISVILLE
METRO GOVERNMENT AND ROBERT
SCHINDLER

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.      CASE NOS. 2018-CA-0150; 2018-CA-0151; 2018-CA-0154;
2018-CA-0156; 2018-CA-0158; 2018-CA-0160
FRANKLIN CIRCUIT COURT NO. 17-CI-00327

JEFFERSON COUNTY LEAGUE OF CITIES,
INC.; CITY OF BANCROFT; CITY OF
BELLEWOOD; CITY OF INDIAN HILLS;
CITY OF JEFFERSONTOWN; CITY OF
SENECA GARDENS; CITY OF SHIVELY;
COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT CABINET;
COMMONWEALTH OF KENTUCKY EX REL.
ATTORNEY GENERAL DANIEL J.
CAMERON; NATIONAL WASTE AND
RECYCLING ASSOCIATION, KENTUCKY
CHAPTER

APPELLEES

**OPINION OF THE COURT BY JUSTICE VANMETER**

**AFFIRMING IN PART AND REVERSING IN PART**

Kentucky Constitution Section 156a permits the legislature to classify

cities on a number of bases but requires that "[a]ll legislation relating to cities

of a certain classification shall apply equally to all cities within the same

classification."  In 2017, the legislature amended KRS[1] Chapter 109 to give home rule cities located in a county containing a consolidated local government certain rights with respect to the waste management district in the county. The question we must resolve is whether the amended statutes comply with the requirement of Section 156a.  We hold that they do not.  We therefore affirm in part and reverse in part the Court of Appeals' opinion and remand this matter to the Franklin Circuit Court for the entry of a new judgment in conformity with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The legislature appears to have first considered garbage and refuse disposal on a statewide basis in 1966 with the enactment of KRS Chapter 109.[2] Over the ensuing decades, it made a number of changes in the chapter, significantly in 1978[3] and 1991.[4]  All of these enactments were general acts applying statewide to every county and/or every city regardless of size.  *See, e.g.*, Act of Mar. 28, 1978, ch. 115 § 2(2)-(3) (defining "city" as "an existing city of any class[,]" and "county" as the "governing body of a county, including urban county governments[]"); Act of March 23, 1966, ch. 66 § 2(1) ("[t]he fiscal court of any county may . . . establish and maintain one or more garbage and

---

[1] Kentucky Revised Statutes.

[2] Act of Mar. 23, 1966, ch. 66, 1966 Ky. Acts 416 ("An Act relating to garbage and refuse, its collection and disposal[]").

[3] Act of Mar. 28, 1978, ch. 115, 1978 Ky. Acts 234 ("An Act relating to solid waste[]").

[4] Act of Feb. 26, 1991, ch. 12, 1991 (1st Ex. Sess.) Ky. Acts 13 ("An Act relating to solid waste management and declaring an emergency[]").

refuse disposal districts[]"); *Id.* § 2(3) ("[a]ny city . . . may . . . establish and maintain one or more garbage and refuse disposal districts[]").

In 1980, the Court of Appeals issued an opinion holding that the 1978 Act did not vest full control over garbage collection to a county, and cities retained that power within their limits. *City of Radcliff v. Hardin Cnty.*, 607 S.W.2d 132, 136 (Ky. App. 1980). The legislature wasted little time in clarifying that it intended counties to be the primary local government unit in charge of solid waste disposal. Act of Mar. 9, 1982, ch. 74 § 1(9), 1982 Ky. Acts 112 (stating legislative intent that KRS Chapter 109 and KRS 67.083(3)(o) was to "provide counties with exclusive authority to develop a solid waste management system for solid waste generated within the geographical boundaries of the county, consistent with the provisions of this chapter and KRS Chapter 224[]"). This Court recognized that statutory change in 1996. *See E. Ky. Res. v. Arnett*, 934 S.W.2d 270, 273 (Ky. 1996) (stating "[t]he management of solid waste, including its disposal, is vested exclusively in county fiscal courts[]"). Explicitly the Court cited KRS 67.083(3)(o) including among a fiscal court's powers "[e]xclusive management of solid wastes by ordinance or contract or both[.]" *Id.*

The Court of Appeals followed *Arnett* in 2005, recognizing county primacy in the area, but also noting "[u]nder the present statutes, cities do not act unilaterally in the regulation of solid waste, but are permitted to act with the permission of counties which have developed a solid waste management plan." *City of Salyersville v. Magoffin Cnty., ex rel. May*, 178 S.W.3d 539, 541 (Ky. App. 2005). Further, the court stated, "in cities already operating solid waste

3

management systems the responsibility rests jointly with the county and the city. Only when it is in the public interest, and by mutual agreement and approval of the Environmental and Public Protection Cabinet, may a county delegate its authority to cities." *Id.* (citing KRS 109.011(6)).

Against this backdrop, the Jefferson County Fiscal Court adopted a waste management district in December 1990. Jefferson Cnty., Ky., Ordinance 16-1990 (adopted and effective Dec. 11, 1990); *see also Plan for solid-waste management district OK'd, Courier-Journal* [Louisville, KY], Dec. 12, 1990, at 23. Following the 2003 approval of the merger of Louisville and Jefferson County as consolidated local government, "[t]he Louisville/Jefferson County Metro Government Waste Management District succeeded to the county's and Jefferson County Waste Management District's designation by the Cabinet as the solid waste management area within and for the geographical boundaries of the county." Louisville Metro Am. Ordinance No. 44-2005; *see also* KRS 67C.113 ("any . . . special taxing or service districts of any kind existing upon successful passage of the question to consolidate a city of the first class and its county shall continue in existence[]"). As a result, since 1990, the District has been responsible for policies related to solid waste management in Jefferson County. In Urban Services District, roughly the former City of Louisville, the Louisville Metro Department of Public Works is responsible for trash pickup. The home rule cities in Jefferson County contract with a private waste management company, such as Eco-Tech Environmental LLC, Rumpke, or Waste Management, within their boundaries. And Jefferson County

4

homeowners not located in an incorporated area contract with a private waste management company.

In 2014, in order to reduce solid waste going to landfill, the District passed a regulation requiring yard waste to be placed in paper bags and prohibiting the collection of yard waste in plastic bags. Louisville/Jefferson Cnty. Metro Gov't Waste Mgt. Dist. Reg. 51.507R. The purpose of the change was to reduce waste going to the landfills by directing yard waste collected in paper bags to composting facilities.

The change was not, apparently, universally popular. As a result, in 2017, the legislature enacted HB 246. Act of March 21, 2017, ch. 105, 2017 Ky. Acts 782 (the "Act").[5] The effect of the Act was to modify the composition of a Board of a waste management district in a county containing a consolidated local government, and to prohibit certain regulations of the District from going into effect without the approval of a home rule city in the county.

In the case at bar, the Franklin Circuit Court held that Section 2 of the Act concerning the organization and structure of a local governmental unit constituted a reasonable classification that did not violate Kentucky Constitution Sections 59 and 60. The trial court, however, ruled the balance of the Act was unconstitutional. On appeal, the Court of Appeals held the trial court erred as to its decision concerning Sections 1, 3, 4, 5, 6 and 7. It

---

[5] In 2016, a similar bill, 2016 HB 454, was introduced, but did not pass the House of Representatives.

therefore affirmed in part and reversed in part. The District filed its motion for discretionary review which we granted.

Before proceeding, we note that the District concedes the constitutionality of Section 2 (relating to the organization and structure of local government), and Section 5 (relating to the responsibility of individual property owners and having statewide application). Section 6 relates to the composition of the District Board, as reorganized by Section 2. Since the District has conceded the constitutionality of Section 2, logic dictates that Section 6 is also constitutional. As to Section 7, the emergency declaration, that section only advances the effective date of the Act. As noted by the trial court in its final Opinion and Order, the passage of time has mooted any claim under Kentucky Constitution Section 55; *see Zuckerman v. Bevin,* 565 S.W.3d 580, 604 n.29 (Ky. 2018) (absent an effective emergency clause, an act becomes effective ninety days following legislature's adjournment); *McIntyre v. Commonwealth*, 221 Ky. 16, 20, 297 S.W. 931, 933 (1927) (holding that when emergency clause in bill was ineffective, "the bill took effect 90 days after the adjournment of the [l]egislature[]"). Our review is therefore limited to the District's claims as to the constitutionality of Sections 1, 3 and 4 of the Act.

## II.    STANDARD OF REVIEW

This case involves a facial challenge to the constitutionality of the Act under the Kentucky Constitution. We recognize, of course, that all laws "contrary to this Constitution, shall be void." Kentucky Constitution Section 26. "Our functions are to determine the constitutional validity and to declare

6

the meaning of what the legislative department has done. We have no other concern." *Johnson v. Commonwealth, ex rel. Meredith*, 291 Ky. 829, 833, 165 S.W.2d 820, 823 (1942). Furthermore, "an [a]ct should be held valid unless it clearly offends the limitations and prohibitions of the constitution. . . . [A]lways the burden is upon one who questions the validity of an Act to sustain his contentions." *Id.* at 833–34, 165 S.W.2d at 823. "In considering an attack on the constitutionality of legislation, this Court has continually resolved any doubt in favor of constitutionality rather than unconstitutionality." *Hallahan v. Mittlebeeler*, 373 S.W.2d 726, 727 (Ky. 1963) (citing *Reynolds Metal Co. v. Martin*, 269 Ky. 378, 381–82, 107 S.W.2d 251, 253 (1937)). We have also held that "the propriety, wisdom and expediency of statutory enactments are exclusively legislative matters." *Hallahan*, 373 S.W.2d at 727 (citing *Craig v. O'Rear*, 199 Ky. 553, 557, 251 S.W. 828, 830 (1923)). Further,

> courts are not at liberty to declare a statute invalid because, in their judgment, it may be unnecessary, or opposed to the best interests of the state. . . . [A]n act will not be declared void on the ground that it is opposed to the spirit supposed to pervade the Constitution, or is against the nature and spirit of the government, or is contrary to the general principles of liberty, or the genius of a free people.

*Craig*, 199 Ky. at 557–58, 251 S.W. at 830 (citations omitted).

Since the issues involve questions of law, our review is de novo, and we do not defer to the legal conclusions of the trial court. *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017).

### III.   ANALYSIS

Although the ratified Constitution resulting from Kentucky's 1890-91 Constitutional Convention contained a prohibition against special and local

7

legislation, *see* Sections 59 and 60, another section, Section 156, directed that classification of cities and towns be based on population. Notably, Section 156 stated that "[t]he organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." KY. CONST. § 156. In 1994, the Commonwealth's voters approved a revision, deleting Section 156 and adopting Section 156a. This new section states:

> The General Assembly may provide for the creation, alteration of boundaries, consolidation, merger, dissolution, government, functions, and officers of cities. The General Assembly shall create such classifications of cities as it deems necessary based on population, tax base, form of government, geography, or any other reasonable basis and enact legislation relating to the classifications. All legislation relating to cities of a certain classification shall apply equally to all cities within the same classification. The classification of all cities and the law pertaining to the classifications in effect at the time of adoption of this section shall remain in effect until otherwise provided by law.

KY. CONST. § 156a.

While the lower courts analyzed the issues in this case primarily under Sections 59 and 60's prohibition against special and local legislation, Section 156a is dispositive. If legislation relating to local government is permitted by Section 156a, then it is obviously constitutional. Conversely, if not permitted under this section, reference to other sections of the constitution is superfluous. *See Calloway Cnty. Sheriff's Dep't v. Woodall*, 607 S.W.3d 557, 566 n.8 (Ky. 2020) (noting that Section 156 permitted classification of cities and was an exception to Section 59); *Klein v. City of Louisville*, 224 Ky. 624,

629, 6 S.W.2d 1104, 1106 (1928) (stating "if the act is within the purview of [Section 156] the provisions of section 59 do not apply").

In 2015, the legislature enacted a wholesale revision of the classification of cities. Louisville/Jefferson County Metro Government remained a city of the first class, but all other cities were classified as "home rule class." KRS 81.005(1). The differentiation between home rule cities is based on whether their form of government is city manager plan, mayor-council plan, or commission plan. KRS 81.005(1)(b). As pertains to Jefferson County, and as noted in the record, at the time the Act passed, it had 83 home rule cities.[6]

As explained by Appellees, the Act merely shifts decision-making authority for solid waste management to a county with a consolidated local government. Section 1 of the Act, codified as KRS 109.041(3)(g), states that the District shall not "prohibit or otherwise restrict materials recovery . . . by any municipality located within the geographic area of the county or waste management district created to serve that county." Another provision in Section 1 of the Act, codified at KRS 109.041(14), limits the ability of the District to restrict a city from using a waste management facility or charging

---

[6] Prior to 2015, the legislature classified cities based on population. KRS 81.010. In its final version prior to repeal, Jefferson County cities were classified as follows: first class, one (Louisville); second class, one (Jeffersontown); third class, two (Prospect and Shively); fourth class, ten (Anchorage, Douglass Hills, Graymoor/Devondale, Hurstborne, Hurstborne Acres, Indian Hills, Lyndon, Middletown, Saint Regis Park, and St. Matthews); fifth class, fifteen (Audubon Park, Barbourmeade, Beechwood Village, Heritage Creek, Hollow Creek, Indian Hills-Cherokee, Lynnview, Meadowvale, Northfield, Plantation, Rolling Hills, Watterson Park, West Buechel, Windy Hills, and Woodlawn Park); and sixth class, all the rest, approximately fifty-four. *Id.*

fees based on the city's waste management stream "if [that city's] solid waste stream is in conformity with state and federal law for the use of the solid waste management facility receiving the waste." Section 3 of the Act, codified at KRS 109.120(2)-(3), requires the District to adopt new rules and regulations. It then provides:

> These rules and regulations shall not be enforceable within the boundaries of the city until approved by the legislative body of the city or, if outside of an incorporated municipality, the legislative body of the consolidated local government, where the rule or regulation is intended to apply. A city shall approve any rule or regulation if rejecting it would cause the city to be in violation of its approved solid waste management plan adopted in accordance with the provisions of KRS 224.43-340 and 224.43-345.

Finally, Section 4 of the Act, codified at KRS 224.43-340(2), permits the cities in a consolidated local government to opt out of the solid waste management plan adopted by the waste management district (although the city is still required to "comply with all requirements of KRS Chapter 224 and administrative regulations promulgated thereunder").

The District and Amicus, Kentucky Resources Council, argue that the Act violates Section 156a for the simple reason that no other home rule cities in the Commonwealth possess the same authority, whether it be couched as veto rights, opt out rights, or merely the power to decide, over decisions of a waste management district. Appellees counter that the Act is merely a general act related to consolidated local government, as a separate form of government, and is therefore a reasonable classification under Section 156a. This argument is somewhat strained since Louisville/Jefferson County Metro Government is not a party to this action; only the District is a party and its powers and

10

authority have been questioned.  Appellees further argue the Act does nothing more than rebalance the power over waste management between the consolidated local government and its waste management district and the home rule cities in the county.

Our view is that Sections 1, 3 and 4 of the Act are unconstitutional as violative of Section 156a of the Constitution.  While we acknowledge Appellees' arguments about rebalancing the power of Jefferson County's 83 home rule cities, we note, prior to 2017, KRS Chapters 109 and 224 were established as general laws, treating all counties, from the largest to the smallest, the same.  Further, the statutes included flexibility to accommodate different circumstances around the Commonwealth.  The Act, however, deviates from treating all home rule cities equally, in violation of Section 156a's requirement that "[a]ll legislation relating to cities of a certain classification shall apply equally to all cities within the same classification."

In *Atherton v. Fox*, 245 Ky. 718, 54 S.W.2d 11 (1932), our predecessor court held unconstitutional an act that required registration of all voters in a county including a city of the first class.  While the court discussed several constitutional provisions, it noted that Section 156 was violated "since it requires registration of voters in three cities of the sixth class, while there is no law at present requiring registration in the other sixth-class cities of the state." *Id.* at 722, 54 S.W. at 13.

Appellees rationalize that the legislature's action could have been based on size difference between Louisville Metro and a Jefferson County city, like

11

Bancroft, in terms of tax base and resources, thereby providing Bancroft with little input into the decisions of the District. Appellee Bancroft points to home rule cities like Columbia in Adair County and Scottsville in Allen County as one city/one county jurisdictions in which a city has greater input into the composition of its county's waste management district. While true that Jefferson County has the most home rule cities of any county in the Commonwealth and the comparison to Adair and Allen may be apt, Appellees ignore that of the 120 counties in the Commonwealth, 82 counties have two or more cities.[7] Kenton County has 17 cities; Boone County has 3; Campbell County has 15.[8] If the home rule cities in Jefferson County need protection from the power and influence of Louisville Metro, we fail to perceive why smaller home rule cities all over the Commonwealth would not require the same protection from their larger neighbors. In other words, the Act violates Section 156a's requirement that "[a]ll legislation relating to cities of a certain classification shall apply equally to all cities within the same classification." *See Louisville/Jefferson Cnty. Metro Gov't v. O'Shea's-Baxter*, LLC, 438 S.W.3d 379, 386 (Ky. 2014) (stating that "no reason to assume that the concentration of retail drink licenses in Louisville is 'fraught with other or different consequences' than the concentration of similar licenses in other Kentucky cities[]").

---

[7] Kentucky League of Cities (https://www.klc.org/InfoCentral/Detail/2/classification). Last visited Mar. 25, 2021.

[8] *Id.*

12

## IV.    CONCLUSION

For the reasons stated herein, we hold that Sections 1, 3 and 4 of the Act violate Kentucky Constitution Section 156a.  The Court of Appeals' opinion is affirmed in part and reversed in part.  This matter is remanded to the Franklin Circuit Court for entry of a judgment in conformity with this opinion.

All sitting.  Minton, C.J.; Conley, Hughes, Lambert, Nickell and VanMeter, JJ., all concur.  Keller, J., concurs in result only without separate opinion.


COUNSEL FOR APPELLANTS:

Peter Frank Ervin
Assistant Jefferson County Attorney


COUNSEL FOR APPELLEE,
JEFFERSON COUNTY LEAGUE
OF CITIES:

Culver Vaughn Halliday
Adam Clay Reeves
Stoll Keenon Ogden PLLC


COUNSEL FOR APPELLEE, CITY
OF BANCROFT:

Terri Elaine Boroughs
Chapin Elizabeth Scheumann
Richard Paul Schiller
Schiller Osbourn Barnes & Maloney, PLLC

COUNSEL FOR APPELEES, CITY OF
BELLEWOOD; CITY OF INDIAN HILLS
AND CITY OF SHIVELY:

Finn Robert Cato
Cato & Cato

COUNSEL FOR APPELLEES,
CITY OF JEFFERSONTOWN AND
CITY OF SENECA GARDENS:

Schuyler John Olt

COUNSEL FOR APPELLEE,
COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT CABINET:

Daniel Clark Cleveland
Joseph Anthony Newberg

COUNSEL FOR APPELLEE,
COMMONWEALTH OF KENTUCKY
EX REL. ATTORNEY GENERAL
DANIEL J. CAMERON:

Barry Lee Dunn
Matthew Franklin Kuhn
Victor Bruce Maddox
Assistant Attorney General

COUNSEL FOR APPELLEE,
NATIONAL WASTE AND RECYCLING
ASSOCIATION, KENTUCKY CHAPTER:

Robert Kenyon Meyer
Young-Eun Park
Joshua Tanner Watkins
Dinsmore & Shohl, LLP

Kathryn Kirby Wood

COUNSEL FOR AMICUS, KENTUCKY
RESOUCES COUNCIL:

Thomas Joseph FitzGerald