RENDERED: JUNE 5, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0814-MR

JOHN HUFFMAN AND
BUTTERMILK PIKE SELF
STORAGE, LLC                                                        APPELLANTS


                                APPEAL FROM KENTON CIRCUIT COURT
v.                              HONORABLE KATHLEEN LAPE, JUDGE
                                ACTION NO. 21-CI-01052


CITY OF CRESCENT SPRINGS,
KENTUCKY; CITY OF CRESCENT
SPRINGS BOARD OF
ADJUSTMENTS; RON SCHIERER, IN
HIS OFFICIAL CAPACITY; TONY
HESTER, IN HIS OFFICIAL
CAPACITY; AND VINCE
ALBANESE, IN HIS OFFICIAL
CAPACITY                                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  John Huffman and Buttermilk Pike Self Storage, LLC

(collectively "Huffman") appeal from two orders of the Kenton Circuit Court

arising from the denial of a zoning variance application by the City of Crescent Springs Board of Adjustment ("the Board"). First, Huffman appeals the circuit court's June 30, 2023 order affirming the Board's denial of his variance application pursuant to KRS[1] 100.347. Second, Huffman appeals the circuit court's June 12, 2024 order granting summary judgment in favor of the City of Crescent Springs ("the City"), the Board, and the individual Board members in their official capacities on Huffman's remaining constitutional and statutory claims. Following review, we affirm.

## I. BACKGROUND

At relevant times, John Huffman was acting as an agent for Buttermilk Pike Self Storage, LLC ("BPSS"), a self-storage facility located at 2550 Schmidt Lane in Crescent Springs, Kentucky. The property is situated within an "Industrial Park-1" zoning district. Beginning sometime around 2018, Huffman undertook construction of a large flagpole on the property for the purpose of displaying the flags of the United States, the Commonwealth of Kentucky, and the City. Huffman served as his own general contractor for the project. Construction took approximately three years and ultimately resulted in a flagpole measuring approximately 199.35 feet in height and 7.5 feet wide at the base.

---

[1] Kentucky Revised Statutes.

Due to the property's proximity to the Cincinnati/Northern Kentucky International Airport, Huffman sought and obtained approval from the Federal Aviation Administration prior to construction. He did not, however, obtain a permit for the flagpole and flags from the City. According to Huffman, he reviewed the applicable ordinances and concluded that a permit was not required, and none of the professionals he engaged to assist with the project advised him otherwise.

After construction was completed, the Kenton County Joint Code Enforcement Board issued a Notice of Violation asserting Huffman had violated the City's zoning ordinances by constructing the flagpole without first obtaining a sign permit and by exceeding the permissible height restrictions applicable to the property. The basis for the notice of violation was Sections 14.3 and 14.4 of the City's Code of Ordinances, which state, in pertinent part:

> SECTION 14.3 SPECIAL SIGNS:
>
> The following signs may be permitted in any zone without a fee, but will require an application for a sign permit, as provided in SECTION 14.4.
>
>  . . .
>
> G. Flags or buntings: In residential districts, flags may not display commercial images. When flags are mounted on poles, the maximum pole height is determined by the maximum structure height for that district. Maximum

-3-

number of flag poles: on residential properties, one; on non-residential properties: two.

SECTION 14.4 SIGN PERMIT REQUIRED FOR ERECTION OF SIGNS:

Unless a particular sign is exempt from the permit requirement under an explicit provision of this Article or other applicable law, then a permit for such sign is required.

https://online.encodeplus.com/regs/crescentsprings-ky/doc-viewer.aspx#secid-470 (last visited May 20, 2025). Under Section 10.19 of the Ordinances, the maximum permitted structure height within an Industrial Park-1 zoning district is forty feet. The flagpole Huffman constructed was approximately five times taller than permitted.

After receiving the notice of violation, on or about April 23, 2021, Huffman filed an application for a variance with the Board. Huffman's application was reviewed by personnel from the Planning and Development Services of Kenton County ("PDS"). On May 25, 2021, PDS issued an unfavorable recommendation regarding the variance, which Huffman did not accept. On June 1, 2021, the Board held a public hearing on Huffman's variance application. The next day, the Board issued a written denial of the application.

Huffman then appealed the Board's decision to the Kenton Circuit Court pursuant to KRS 100.347 and additionally asserted constitutional and statutory claims challenging the validity and enforcement of the ordinances.

-4-

On June 30, 2023, the circuit court entered an order affirming the Board's denial of the variance application. The circuit court later granted summary judgment on Huffman's remaining claims by order entered June 12, 2024.

This appeal followed.

## II. ANALYSIS

On appeal, Huffman advances three principal arguments. First, he argues the Board and circuit court erred in concluding his violation of the City's zoning ordinances was "willful" under KRS 100.243(2), and further contends the Board failed to make sufficient findings supporting denial of the requested variance. Second, Huffman argues the City's sign ordinances are unconstitutional because they are unintelligible. Third, he contends the Board's decision was invalid because one Board member failed to complete the training required by KRS 100.346. We address each argument in turn.

### A. *The Board's Decision to Deny Huffman's Request for a Variance*.

Boards of adjustment possess authority to hear and decide applications for variances. KRS 100.241. A variance constitutes "a departure from dimensional terms of the zoning regulation pertaining to the height, width, length, or location of structures[.]" KRS 100.111(24).

"The Board of Adjustment is an administrative board performing specified legislative functions relative to zoning." *Bourbon Cnty. Bd. of*

-5-

*Adjustment v. Currans*, 873 S.W.2d 836, 838 (Ky. App. 1994). "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky. App. 1998) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 309 (Ky. 1972)). The applicant's burden is to provide evidence upon which a Board can justify allowing a variance. *Gentry v. Ressnier*, 437 S.W.2d 756, 758 (Ky. 1969).

"Where an administrative agency's decision is to deny relief to the party with the burden of proof or persuasion, as was the case here, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it." *Finance & Administration Cabinet, Dep't of Revenue v. Slagel*, 253 S.W.3d 74, 76 (Ky. App. 2008). As explained in *Currans*, this standard is even more demanding than the "substantial evidence" standard applied by the circuit court in this case.

> Not infrequently, contestants appear at the judicial level arguing that the administrative decision is not supported by substantial evidence when the board has offered no relief in the first instance. In other words, the board has ruled that the one having the burden of proof— usually the applicant—has failed. In such cases, attention should be directed to the administrative record in search of compelling evidence demonstrating that the denial of the relief sought was arbitrary. The argument should be that the record compels relief. The argument

that there is no substantial evidence to support nonrelief is an anomaly.

*Currans*, 873 S.W.2d at 838.

As this Court has previously recognized, KRS 100.243 "demonstrates a bias against variances." *Currans*, 873 S.W.2d at 837. The statute provides:

> (1) Before any variance is granted, the board must find that the granting of the variance will not adversely affect the public health, safety or welfare, will not alter the essential character of the general vicinity, will not cause a hazard or a nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations. In making these findings, the board shall consider whether:
>
>> (a) The requested variance arises from special circumstances which do not generally apply to land in the general vicinity, or in the same zone;
>>
>> (b) The strict application of the provisions of the regulation would deprive the applicant of the reasonable use of the land or would create an unnecessary hardship on the applicant; and
>>
>> (c) The circumstances are the result of actions of the applicant taken subsequent to the adoption of the zoning regulation from which relief is sought.
>
> ***(2) The board shall deny any request for a variance arising from circumstances that are the result of willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought.***

-7-

KRS 100.243 (emphasis added).

Following a public hearing, the Board denied Huffman's request for a variance. In doing so, the Board specifically found that Huffman's request arose from a "willful violation" of the zoning ordinances because Huffman erected the flagpole without first obtaining the required permit. The Board further concluded that the ordinances clearly required a permit for the flagpole and that KRS 100.243(2) therefore required denial of the variance request.

On appeal, Huffman argues the Board failed to make adequate findings supporting its decision and further contends the Board and the circuit court applied an incorrect legal definition of "willful." Huffman maintains he acted under a good-faith belief that no permit was required because he interpreted the ordinances as applying only to residential districts and because none of the engineers or contractors with whom he consulted advised him otherwise.

Although a board of adjustment must make findings sufficient to permit meaningful judicial review, it "is not held to strict judicial standards" in doing so. *Ball v. Oldham County Planning and Zoning Commission*, 375 S.W.3d 79, 84-85 (Ky. App. 2012) (quoting *Currans*, 873 S.W.2d at 838). While the Board's findings are certainly not detailed, they are sufficient to permit meaningful judicial review.

The Board expressly found that Huffman committed a willful violation of the zoning ordinances by constructing the flagpole without first obtaining the required permit and further concluded that the ordinances clearly required such a permit. Implicit in these findings was the Board's rejection of Huffman's testimony that he reasonably misunderstood the ordinances and acted in good-faith compliance with them.

The finding of willfulness is itself one of fact, and thus we may not disregard the Board on this issue without first determining that the evidence compelled a contrary result. *Currans*, 873 S.W.2d at 838. To do so, we must first determine what "willful" means in this context. KRS 100.243 does not define the term. However, Kentucky courts have recognized in other statutory contexts that a "willful" violation may occur where conduct is "simply marked by careless disregard whether or not one has the right so to act." *Couch v. Natural Resources and Environmental Protection Cabinet*, 986 S.W.2d 158, 163 (Ky. 1999) (internal quotation marks omitted).

This is essentially the definition of willfulness this Court applied in *Ball*. In *Ball*, the Oldham County Board of Adjustments and Appeals granted a variance allowing the subdivision of a tract even though one of the resulting parcels would violate the road frontage ordinance in place at the time. On appeal, a neighboring property owner challenged the variance raising, among other

arguments, the Board's failure to make an explicit finding regarding willfulness. In rejecting that argument, we held that the appellant failed to present any tenable argument on this point where the evidence showed that the property owner applied for the variance prior to subdividing the property. We explained:

> Appellant also complains that the Board failed to make adequate findings with respect to KRS 100.243(2), which provides that "[t]he board shall deny any request for a variance arising from circumstances that are the result of willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought." However, the record reflects that no evidence of "willful violations of the zoning regulation" on the part of the movant was presented in this case. Had the movant actually divided the ten-acre parcel and sold a portion of it before seeking a variance as to the remainder, Appellant could have made a reasonable argument in this regard. However, this did not occur here. Instead, at the time this matter was presented to the Board and to the circuit court, the ten-acre tract remained intact. Consequently, given a complete lack of evidence, we fail to see how the Board committed reversible error by failing to make a finding of fact regarding this issue.

*Ball*, 375 S.W.3d at 85-86.

Certainly, not every intentional act of construction necessarily constitutes a willful violation. A property owner who diligently attempts compliance, but proceeds based upon materially erroneous survey information, for example, might intentionally construct a structure without acting in willful disregard of existing ordinances. For example, courts have recognized

-10-

circumstances in which a property owner intentionally constructed a structure, but the resulting violation arose from an independent surveying or staking error despite the owner's efforts to comply with applicable regulations. *See, e.g.*, *Osborne v. Zoning Bd. of Appeals of Town of Guilford*, 41 Conn. App. 351, 354-55, 675 A.2d 917, 919 (1996). In such circumstances, the violation arises not from careless disregard of the law's requirements, but from a good-faith construction error notwithstanding efforts at compliance. This case, however, presents markedly different circumstances.

Here, Huffman undertook a massive, multi-year construction project resulting in a nearly 200-foot flagpole in a zoning district where the maximum permitted structure height was forty feet. Huffman acted as his own general contractor and admittedly proceeded without obtaining any approval from the City. Although Huffman testified that he believed no permit was required, the Board was not obligated to accept that explanation.[2] Rather, the Board concluded that a straightforward reading of the ordinances should have alerted Huffman that a permit was required for the flagpole and that proceeding without one constituted a

---

[2] We do not question Huffman's sincerity or motivations in undertaking this project. The record reflects that the flagpole was intended as an expression of patriotism inspired in part by Huffman's admiration for the United States and his mother-in-law's immigration from Cuba. Those motivations are unquestionably laudable. Nevertheless, courts are obligated to apply zoning ordinances and statutes consistently and in accordance with governing law and precedent. To do otherwise would undermine the very rule-of-law principles upon which our constitutional system depends.

-11-

willful violation.  We cannot conclude that the evidence *compelled* a different conclusion.[3]  Accordingly, the circuit court properly affirmed the Board's denial of the requested variance pursuant to KRS 100.243(2).

### B. Constitutional Challenges to the Ordinances

Huffman next argues that the City's ordinances are unconstitutional because they are vague, unintelligible, and arbitrary.  These claims were resolved by summary judgment and involve questions of constitutional interpretation.  Accordingly, our review is *de novo*.  *Louisville/Jefferson Cnty. Metro Gov't v. O'Shea's-Baxter, LLC*, 438 S.W.3d 379, 382 (Ky. 2014); *Moore v. Ward*, 377 S.W.2d 881, 883 (Ky. 1964).

As opposed to the traditional void-for-vagueness doctrine, which most commonly arises in criminal or First Amendment contexts, Kentucky courts have recognized that non-punitive civil and regulatory enactments are generally reviewed under the somewhat less rigorous "unintelligibility" standard.  *Davenport Extreme Pools and Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 160 (Ky. App. 2024); *Utility Management Group, LLC v. Pike County Fiscal Court*, 531 S.W.3d 3, 12 (Ky. 2017).  Under that framework, civil regulatory enactments are invalid only

---

[3] Even if the lower "substantial evidence" standard applied, the result would be the same. Although the ordinances are not models of perfect clarity or organization, they reasonably convey that a permit was required for the flagpole and that any flagpole erected within the Industrial Park-1 zoning district was subject to the applicable forty-foot height limitation.

-12-

where they are so vague, uncertain, or unintelligible that persons affected by them cannot reasonably understand what is required or prohibited. *Id.* Both doctrines, however, are rooted in the idea of fairness. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 1957, 32 L. Ed. 2d 584 (1972).

In *Folks v. Barren County*, 232 S.W.2d 1010, 1013 (Ky. 1950), the Court explained that where the enacting body "in framing the law, has not expressed its intent intelligibly, or in language that the people upon whom it is designed to operate or whom it affects can understand, or from which the courts can deduce the legislative will, the statute will be declared to be inoperative and void." By contrast, "[i]f [the] people it affects can understand it and courts such as this one can interpret it without great difficulty, the statute must be deemed constitutional." *Utility Management Group*, 531 S.W.3d at 13.

While it is true that Huffman testified that he was unable to ascertain that the ordinances applied to him, the standard is not subjective. We must ask whether the ordinances are reasonably capable of understanding. This is an objective standard, and we evaluate the ordinances accordingly. Huffman principally argues that the ordinances are unintelligible because the provision addressing flags begins with language referencing residential districts. According to Huffman, an ordinary reader would conclude the ordinance applies only to residential property and not to commercial or industrial property.

Certainly, the ordinances at issue are not models of perfect drafting or organization; but the Constitution does not demand perfection. *Lexington Fayette Cnty. Food and Beverage Ass'n v. Lexington-Fayette Urban Cnty. Government*, 131 S.W.3d 745, 755 (Ky. 2004). The test is comprehensibility. These ordinances are far from incomprehensible. Section 14.3 expressly identifies "[f]lags or buntings" as regulated signs and further provides that such signs require an application for a sign permit. The same subsection also distinguishes between residential and non-residential properties when establishing the permissible number of flagpoles, thereby undermining Huffman's contention that the entire regulation applies solely to residential districts. Moreover, the ordinances reasonably informed Huffman that if flags were mounted on poles, the permissible height of the poles was tied to the maximum structure height permitted within the applicable zoning district. Under Section 10.19, the maximum permitted structure height within the Industrial Park-1 district was forty feet. Huffman's flagpole stood nearly 200 feet tall.

In short, while the ordinances may not be drafted with ideal precision, persons of ordinary intelligence are not required to guess at whether a permit was required for a nearly 200-foot flagpole or whether such a structure was subject to dimensional limitations. To the extent Huffman relied solely upon headings or ceased reading after the ordinance's initial reference to residential districts, such a

-14-

reading was unreasonable because persons subject to ordinances are charged with reading them as a whole. Ignorance of the law is no excuse. In fact, "[t]his court has never held that one's nonaction, through ignorance of the law, could extend or enlarge his legal rights." *Logsdon v. Haney*, 74 S.W. 1073, 1073 (Ky. 1903). Thus, while a reader may not initially expect the ordinances to treat a flag as a type of sign, the ordinances, when read as a whole, reasonably convey that they do. Accordingly, the circuit court properly granted summary judgment on Huffman's constitutional claims.

### C. Training of the Board Member

Finally, Huffman argues that the Board's decision must be invalidated because one member of the Board failed to complete the training required by KRS 100.346.[4] Because the material facts concerning this issue are undisputed and the question presented is purely one of statutory interpretation, our review is de novo. \ *O'Shea's-Baxter, LLC*, 438 S.W.3d at 382.

The City concedes that one member of the Board did not complete the training required by KRS 100.346. However, the statute itself expressly provides a remedy for such noncompliance. KRS 100.346(7) states that a board member who fails to complete the required training "shall be subject to removal" pursuant to

---

[4] This statute was recently re-codified. During the pendency of the action, it was codified as KRS 147A.027. The pertinent section (7) is identical to the previous version.

KRS 100.217. The statute does not provide that actions taken by the board are void or otherwise invalid due to a member's training deficiency.

Moreover, the Board member at issue voted in Huffman's favor. Thus, the allegedly unqualified member was not part of the majority denying the variance request.

Under these circumstances, we decline to invalidate the Board's decision based upon the statutory training deficiency. Accordingly, the circuit court properly granted summary judgment on this claim.

### III. CONCLUSION

For the foregoing reasons, the June 30, 2023, and June 12, 2024 orders of the Kenton Circuit Court are AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| Todd V. McMurtry<br>Fort Mitchell, Kentucky | Jeffrey C. Mando<br>Covington, Kentucky |